IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA HUCKABAA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:13-cv-753-TFM |
| | ) | [wo] |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Patricia Huckabaa ("Plaintiff" or "Huckabaa") protectively applied for Disability Insurance Benefits and Social Security Income under Title II and Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., on July 17, 2008.  (Tr. 12).  After being denied, Huckabaa timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on March 5, 2010.  (Tr. 9).  Daniels sought review by the Appeals Council who rejected review on March 14, 2011.  (Tr. 1).  As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").  *Id.*  Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c).  After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Huckabaa seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits.  United States District Courts may conduct

limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405.  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied.  *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion  of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact,

and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. §

423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate

and distinct program.  SSI is a general public assistance measure providing an additional

resource to the aged, blind, and disabled to assure that their income does not fall below

the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See*

42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate

programs, the law and regulations governing a claim for DIB and a claim for SSI are

identical; therefore, claims for DIB and SSI are treated identically for the purpose of

determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.

1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the

meaning of the Social Security Act which defines disability in virtually identical language

for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§

404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is

unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one

resulting from anatomical, physiological, or psychological abnormalities which are

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes.
*See* Social Security Administration, Social Security Handbook, § 136.1, *available at*
http://www.ssa.gov/OP_Home/handbook/handbook.html
[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general
tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100,
*available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42
U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation
process to determine whether a claimant is entitled to benefits.   *See* 20 C.F.R.  §§
404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments
 set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next
question, or, on steps three and five, to a finding of disability.  A negative
answer to any question, other than step three, leads to a determination of
"not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*,
357 F.3d 1232, 1237-39 (11th Cir. 2004).   Claimants establish a prima facie case of
qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At
Step 5, the burden shifts to the Commissioner, who must then show there are a significant
number of jobs in the national economy the claimant can perform.   *Id.*

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

### IV.  ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was born in 1971 and was 36 years old as of the alleged onset of disability date and 41 years old at the time of the ALJ's September 5, 2012 decision.  (Tr. 1048-1049).  She alleged disability due to limitations from both physical and mental medical conditions.  (Tr. 158).  She obtained a commercial driver's license and attended some college.  (Tr. 1065-66).  From 2002 through September 16, 2007, she worked as a

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

technician/machine operator at a carpet yarn manufacturing plant: a job which, according to Plaintiff, involved lifting 25 to 50 pounds frequently and up to 100 pounds or more at times.  (Tr. 159-60).  The vocational expert testified that Plaintiff's technician/machine operator job was in the "heavy" exertional category (requiring lifting 50 to 100 pounds frequently) and was a semi-skilled job (specific vocational preparation) (SVP) of 3.  (Tr. 1075-76).[5]

In her decision, the ALJ determined Plaintiff had not engaged in substantial gainful activity since September 26, 2007, the alleged onset date.  (Tr. 14).  The ALJ found that Ms. Huckabaa suffered from the following severe impairments: depression, panic disorder, fibromyalgia, carpel tunnel syndrome status post decompression, obesity and rheumatoid arthritis.  (Tr. 14).  However, the ALJ found that Huckabaa did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  (Tr. 14).  The ALJ concluded Huckabaa had the residual functional capacity to perform:

> Light work as defined in 20 §§ CFR 404.1567 (b) and 416.967(b) except the claimant is limited to work which will only require the claimant to: frequently perform fine manipulation; work independently (however, the claimant can work in close proximity to others); perform simple, routine and repetitive tasks; have non-confrontational supervision; adapt to minimal changes in the work setting; and have brief, superficial contact with the public.

(Tr. 16).

---

[5] *See Dictionary of Occupational Titles (DOT)* # 929.687-030("Material Handler") (4th ed. rev. 1991), available at 1991 WL 688174.

The ALJ then found Huckabaa unable to perform any of her past relevant work. (Tr. 20).  However, the ALJ determined there were jobs that exist in significant numbers in the national economy Huckabaa could perform.  (Tr. 20).  Finally, the ALJ concluded that Huckabaa had not been under a disability as defined in the Social Security Act from September 26, 2007, the alleged onset date, through March 5, 201, the date of her decision.  (Tr. 21).  The Appeals Council denied her request for review by letter dated March 14, 2011.  (Tr. 1).

Thereafter, Huckabaa filed a Civil Action before this Court resulting in an Order reversing and remanding her decision to the Commissioner for further proceedings.  (Tr. 1103).  The Appeals Council issued an order remanding Huckabaa's case to the ALJ for the removal of evidence not related to Huckabaa, for further consideration of Huckabaa's RFC, and, if warranted, the testimony of a Vocational Expert.  (Tr. 1110-1111).  The Appeals Council also associated Huckabaa's case with subsequent claims for Title II and XVI benefits filed on July 25, 2011.  (Tr. 1111).

On June 5, 2012, Huckabaa appeared in Evergreen, Alabama and testified at a second video hearing held before the ALJ.  Huckabaa received an unfavorable decision from the ALJ dated September 5, 2012.  (Tr. 1033).  In his decision, the ALJ found that Huckabaa met the insured requirements of the Social Security Act through December 31, 2012.  (Tr. 1038).  Next, the ALJ determined that Huckabaa had not engaged in subtantial gainful activity since September 26, 2007, the alleged onset date.  (Tr. 1038).  The ALJ found that Huckabaa suffered from the following severe impairments: depression, panic disorder, carpel tunnel syndrome status post decompression, obesity, and fibromyalgia.

(Tr. 1038).   However, the ALJ found that Huckabaa did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Tr. 1039).   The ALJ concluded that Huckabaa had the residual functional capacity to perform:

> A reduced range of light work as defined in 20 §§ CFT 404.1567 (b) and 416.967(b).   She is limited to frequent fine manipulation.   She is able to work independently and perform simple, routine, repetitive tasks.   She is limited to non-confrontational supervision.   She can adapt to minimal changes in the workplace but she is limited to brief, superficial contact with the public.

(Tr. 1041).

The ALJ found Huckabaa unable to perform any of her past relevant work.   (Tr. 1047).   However, the ALJ determined there were jobs that exist in significant numbers in the national economy Huckabaa could perform.   (Tr. 1048).   Finally, the ALJ concluded that Huckabaa had not been under a disability as defined in the Social Security Act from September 26, 2007, through September 5, 2012, the date of his decision.   (Tr. 1049). Huckabaa appealed the ALJ's decision to the Appeals Council and her request for review was denied in a letter dated August 15, 2013.   (Tr. 1020).

## V.  ISSUES

Huckabaa raises two issues for judicial review.   The issues and arguments Huckabaa raises turn upon this Court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen,* 815 F.2d 622, 624-25(11th Cir.1987).   These issues are set out by Huckabaa as follows:

(1) Whether the Commissioner's decision should be reversed as the ALJ failed to properly consider the opinion of Dr. Randall Jordan, Psy.D., a consultative examiner. (*See* Doc. 14 at 5).

(2)   Whether the Commissioner's decision should be reversed because the ALJ failed to accord **any** weight to the opinions of Dr. Davis, M.D., Huckabaa's treating physician.  (*See* Doc. 14 at 9).  (Emphasis in original.)

## VI.  DISCUSSION

### I.  The ALJ properly considered the opinion of Dr. Randall Jordan, Psy.D., a consultative examiner.

Plaintiff generally argues that the Commissioner's decision should be reversed because the ALJ failed to properly consider the opinion of Dr. Randall Jordan, Psy.D., a consultative examining psychologist.  While Huckabaa agrees that Dr. Jordan's opinion is consistent with the medical evidence of record, she argues the ALJ failed to properly consider Jordan's opinion which, in fact, supports a finding of disability based upon the severity of Huckabaa's underlying mental impairments.  (Pl. Brief. p. 5).  Thus, Plaintiff argues that the ALJ either misunderstood or misapplied Jordan's findings and opinion.

Indeed, the ALJ stated that he gave Dr. Jordan's opinion "great weight," and explicitly relied on it in establishing Plaintiff's "B criteria" at step three of the sequential evaluation (described hereinafter at p.12) and in assessing Plaintiff's residual functional capacity.   (Tr. 1040, 1043-44).   Dr. Jordan's report includes essentially normal examination findings, including his finding that Plaintiff's psychiatric condition did not interfere with daily living skill, although Plaintiff spent the majority of her day isolating

herself to her home.  (Tr. 1220).  Dr. Jordan assessed Plaintiff with bipolar disorder, depressed type, and panic attacks with agoraphobia, and assigned Plaintiff a global assessment of functioning (GAF) of 40.[6]  When asked to describe Plaintiff's mental functional limitations, Dr. Jordan concluded that Plaintiff:

- could function independently;
- could hear and understand normal conversation without great difficulty;
- could carry out and remember instructions of a simple, one-step nature;
- could carry out multi-step tasks without some degree of supervision; and
- had a moderately-to-severely comprised ability to respond well to coworkers, supervision, and everyday work pressures.

(Tr. 1252).

By comparison, at step three, the ALJ found that Plaintiff had only mild difficulties in activities of daily living, had moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace.  (Tr. 1040).  As for mental limitations in the residual functional capacity finding, the ALJ found that Plaintiff:

- could work independently;
- could perform simple, routine, repetitive tasks;
- was limited to work involving non-confrontational supervision;
- could adapt to minimal changes in the workplace; and
- should be limited to brief, superficial contact with the public.

(Tr. 1041).

In spite of the close correlation between the ALJ's findings and Dr. Jordan's opinion, Plaintiff argues that they are fundamentally opposed. On October 12, 2011, Huckabaa saw Dr. Jordan for a consultative evaluation.  (Tr. 1250).  She reported

---

[6]  In the prior edition of the *Diagnostic and Statistical Manual of Mental Disorders (DSM),* GAF was used to subjectively rate the social, occupational, and psychological functioning of adults.  *See DSM-IV-TR* at 34 (4th ed. rev. 2000).  GAF scores were dropped from the newest edition of the DSM "for several reasons, including its conceptual lack of clarity . . .  And questionable psychometrics in routine practice."  *See DSM-5,* at *16 (5th ed. 2013).

"'depression, sadness, hopelessness, and isolation" as well as depressive cycles, manic periods, and daily panic attacks.  (Tr. 1250).  In his examination, Dr. Jordan noted that Huckabaa's "affect was restricted but was congruent with mood, which might be described as depressed and nervous but appropriate to situation."  (Tr. 1251).  He later noted "socially, the claimant functions in a fairly isolated manner.  The claimant spends the majority of her day doing a little and resting and isolating herself to home."  (Tr. 1251).  Based upon his examination of Huckabaa, Dr. Jordan diagnosed "Bipolar disorder, depressed type" and "Panic attacks with agoraphobia" and assigned a GAF score of 40.  (Tr. 1251).  He further indicated a "guarded" prognosis for the next 6-12 months despite finding that Huckabaa was motivated and cooperative during the exam. (Tr. 1252).  He then noted "[i]n terms of vocation, the claimant's ability to respond well to coworkers, supervisors, and everyday work pressures is compromised to a **moderate to severe** degree due to psychiatric issues."  (Emphasis added) (Tr. 1252).

At step three of the sequential evaluation, the ALJ compares the objective evidence of record with specific, listed impairments ("listings") to determine whether the claimant meets the criteria of those impairments.  If the evidence does not specifically meet each of the criteria of the relevant listing, the ALJ will find that the claimant does not meet that listing.  SSR 96-5p, 1996 WL 374183.  For mental impairments the listings require an assessment of degree of limitation in four broad areas, known as the "B criteria": activities of daily living, maintaining social functioning; maintaining concentration, persistence, and pace; and episodes of decompensation.  20 C.F.R. § 404.1520a.  Here, the ALJ emphasized and relied on the opinions of Dr. Jordan (Tr. 952-

54, 1250-52) and the opinion of State agency consulting psychologist Hope Jackson (Tr. 966) – opinions which the ALJ found merited "great weight" (Tr. 1043-44, 1046) and "some weight" (Tr. 1046) – in assessing Plaintiff's limitations as part of the "B criteria". (Tr. 1040). *See Sharfaz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987)(The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore.")

Applying the "B criteria" at step three, the ALJ found that Plaintiff had "moderate" difficulties in social functioning based on evidence about her social functioning at home and work. (Tr. 1040). By comparison Dr. Jordan concluded that Plaintiff would have moderately-to-severely compromised ability to respond well to coworkers, supervision and everyday work pressures. (Tr. 1252). Plaintiff argues that the ALJ "implicitly rejected the 'severe' end of Dr. Jordan's finding without explanation by not including a "B criteria" finding of "moderate to severe" in social functioning. She also argues that a "true social setting" involves the workplace, not the home. Plaintiff argues also that she would have met the "B criteria of a mental listing (presumably Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders)) if the ALJ had found that she had a "moderate to severe" limitation in social functioning. *See* Pl. Br. At 6. For the following reasons, the court concludes that each of Plaintiff's sub-arguments fail.

First, Plaintiff's arguments misconstrue the application of the "B criteria" of the mental listings. The first three "B criteria" categories – activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace – are rated on a five-point scale of none - mild - moderate - marked - extreme. *See* 20 C.F.R. §

404. 1520a(c);20 C.F.R. pt. 404 subpt. P, app. 1 § 12.00.  Dr. Jordan did not opine that Plaintiff had "marked" or even "moderate-to-marked" social functioning limitations. Rather, he found "moderate to severe" limitations in social functioning, which is not included in the scale.

Second, Plaintiff's contention that only workplace social functioning is "true" social functioning for purposes of step three is incorrect.  The regulations are clear.  In addition to social behavior in the workplace, "[s]ocial functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.  Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00C(2).

Finally, even if Dr. Jordan's opinion did indicate that Plaintiff had "marked" difficulty in social functioning, Plaintiff would still failed to meet the listing.  Both Listing 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders) require that a claimant meet two of the following four criteria: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04B, 12.06B.  Plaintiff's arguments, even if accepted fail to establish that she met more than one of those four criteria.

Next, Plaintiff argues that the ALJ's residual functional capacity assessment did not adequately address Dr. Jordan's findings and opinions.  Specifically, Plaintiff argues

that the ALJ's attempt to reject the GAF score assigned by Dr. Jordan is erroneous.  The ALJ stated that "Dr. Jordan assessed the GAF scores of 40 and 45, which are indicative of some impairment in reality testing or communication and serious symptoms, respectively."  (Tr. 1046).  He further found that "these scores are inconsistent with Dr. Jordan's opinion concerning the claimant's abilities and his findings from examination." (Tr. 1046).  Plaintiff argues this finding is in error.

For the following reasons, the court concludes this argument is meritless.  The law is clear; the Commissioner alone has the authority to determine a claimant's residual functional capacity.   20 C.F.R. § 404.1546(c)(residual functional capacity finding is reserved to the Commissioner.)  Further, the residual functional capacity finding is based on **all** the evidence of record.  20 C.F.R. § 404.1545(a); *Moore v. Barnhart,* 405 F. 3d 1208, 1212-13 (11th Cir. 2005) (upholding ALJ's RFC finding which was based on examination findings and claimant's own statements of capabilities.)   [7]Also, Plaintiff premises this argument primarily, if not solely, on Dr. Jordan's GAF scores.  (Tr. 953, 1251).  However, the ALJ explicitly stated that GAF scores are not endorsed for use in "Social Security and SSI disability programs."(Tr. 1046).  *See* 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000); *accord Wind v. Barnhart,* 133 F. App'x 684, 692 n. 5 (11th Cir. 2005).  Indeed, the American Psychiatric Association recently removed the use of the GAF scale from the newest edition of the DSM "for several reasons, including its conceptual lack of clarity . . .  and questionable psychometrics in routine practice."  *See*

---

[7]The Court understands the Plaintiff to generally argue that the ALJ's residual functional capacity needs to be based on the opinion of a particular medical source or sources.  (Doc. 14; Pl. Br. at 6-7 and 10-12.). This is not the case:  A residual functional capacity is based on all the evidence of record.  *Barnhart, id.*

*DSM-5* at *16.   Similarly, in *Davis v. Astrue,* 287 F. App'x 748 (11th Cir. 2008), the Eleventh Circuit recognized that a low GAF score did not merit any weight because it was not supported by the medical source's subsequent opinion that the claimant was "functioning fair."  *Id.* at 750-51

Additionally, the ALJ stated that Dr. Jordan's assignment of a GAF score of 40 was at odds with his narrative explanation of Plaintiff's actual functional capabilities – i.e. that she could function independently, could carry out and remember simple instructions, etc.  (Tr. 1252).   Thus, to the extent that Dr. Jordan's GAF scores were an opinion of Plaintiff's functioning, the ALJ gave a valid, good reason to reject those GAF scores.  20 C.F.R. § 404.1527(c)(4)(ALJ must consider the consistency of evidence with other evidence); *Winschel v. Commissioner,* 631 F.3d 1176, 1179 (good cause to discount medical source opinion which was inconsistent with that source's other findings). Accordingly, the court concludes Plaintiff's argument that her GAF scores undermine the ALJ's residual functional capacity finding is meritless.[8]

## II.  The ALJ gave good reasons for discounting Dr. Davis's statements that Plaintiff was "disabled" or "[un]able to work."

Plaintiff next argues that the ALJ was required to assign controlling weight or great weight to statements by Dr. Davis that Plaintiff was "disabled" or "[un]able to

---

[8]  Plaintiff makes the cursory argument that this case is due to be remanded because the ALJ did not address the weight he gave to one of the non-examining state psychologist's opinions.  *See* Pls. Brief at p.8.  However, there is no reason to remand an otherwise sufficient residual functional capacity finding when "[an] unmentioned physician's opinion merely supported the ALJ's conclusion, and was thus unnecessary."  *See Nyberg v. Comm'r of Soc. Sec.,* 179 F. App'x 589, 592 (11th Cir. 2006) (noting that, where the outcome of the case could not reasonably have changed had an unmentioned opinion been considered, remand is not required).  (Citation omitted.)  The Court concludes that such is the case here. Indeed Dr. Hinton's findings are functionally identical to Dr. Jackson's opinion, essentially consistent with Dr. Jordan's opinion, and essentially consistent with the ALJ's step three and residual functional capacity findings.  (*Compare* Tr. 569, 606 *with Tr.* 966, 1040, 1041, 1252.)

work." *See* Pl. Br. at 9-14.  The Eleventh Circuit has established that the opinion of a treating physician "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'"  "'[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnart,* 357 F.3d at 1241 (11th Cir. 2004)(citing *Lewis,* 125 F.3d 1436,1440 (11th Cir. 1997).  In *Lewis*, the Eleventh Circuit also established that the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician and that the failure to do so constitutes reversible error.  125 F.3d at 1440. Furthermore, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record.  *Holley v. Chater*, 931 F.Supp. 840, 849 (S.D. Fla. 1996) (citing *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)).

However, the simple fact that a treating physician's opinion is included in the evidence does not require the ALJ to follow it but rather the opinion may be given less weight or dismissed entirely. *Washington v. Barnhart*, 175 F. Supp. 2d 1340, 1346 (M.D. Ala. 2001) (finding that the ALJ properly considered the treating physician's medical opinions based on the objective medical evidence in the record as a whole it was "entirely reasonable" when the treating physician's records and notes were inconsistent).  When an ALJ chooses to reject the opinions of the claimant's treating physicians there needs to be sufficient detail set forth by the ALJ for the court to conduct a meaningful review. *Pettaway v. Astrue*, Case No. 06-00880-WS-B, 2008 WL 1836738, at *14 (S.D. Ala. Apr.

21, 2008) (finding that the ALJ erred in rejecting the opinions of a treating physician because insufficient detail was set forth by the ALJ for the reviewing court to be able to conduct any kind of meaningful analysis).

In January 2008, Plaintiff saw her family practice physician, Dr. Davis, with an unspecified complaint. Dr. Davis gave no explanation of any particular functional limitations, but stated as follows:

> [Plaintiff was] probably disabled at least from the fibrosistis. She said Dr. Jake told her that he would suggest getting some other kind of job which she is going to do. In the scheme of things she has this pain problem that has been diagnosed as fibrosistis plus bipolar disorder with chronic anxiety and panic disorder that is preventing her from working. I'm not for sure how she can keep down a full-time job particularly with panic disorder but that remains to be seen.

(Tr. 906). In March 2008, Plaintiff told Dr. Davis that she was "applying for disability." Dr. Davis stated that Plaintiff "has fibromyalgia [and] panic disorder. I think both of which are principle reasons she is disabled." (Tr. 905).

In April 2008, Plaintiff told Dr. Davis that she was upset with her long-term insurance company "because they say she is ready to work." Dr. Davis told Plaintiff that

> if Dr. Jakes [the rheumatologist] does not feel that she is disabled in any way that the only thing I could do would be to get another rheumatologist to see her and see what they think. She insists that Dr. Jakes told her when she saw him that she would not be able to go back to work for Shaw because of the magnitude of the work that she had to do. I told her I have not seen any records that would indicate that one way or the other. That my thoughts always have been that this has been more of a psychiatric problem because of panic disorder, anxiety, depression, etc.

(Tr. 904). In May 2008, Plaintiff told Dr. Davis that "she [was] feeling a lot better" but that she was still "not able to work." Dr. Davis stated that he "[did not] know that

fibromyalgia is contributing to that or not.  I think it is primarily her anxiety and panic disorder that I felt was the most logical explanation on why she was not able to work." (Tr. 903).  In June 2008, Plaintiff told Dr. Davis that she could not work and was "unable to work at Shaw [her prior workplace]."   Dr. Davis did not comment on Plaintiff's disability status.  (Tr. 902).  Plaintiff argues that this evidence proves that she is disabled. *See* Pl. Br. at 11.

An independent review of the record demonstrates that Plaintiff failed to submit evidence from Dr. Davis or any other physician regarding any of her particular functional limitations.  *See, e.g., Moore,* 405 F. 3d 1208, 1212 (11th Cir. 2005)(ALJ reasonably discounted physician's opinion which failed to give specific functional limitations.). Indeed, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or even any special significance.   20 C.F.R.  §§ 404.1527(d)(1)-(3); *Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986).  Indeed, the ALJ identified this as the first reasons for assigning "little weight" to Dr. Davis's opinions.  (Tr. 1047)

Furthermore, the court concludes that the ALJ identified substantial evidence upon which he could base his residual functional capacity finding.  *See* 20 C.F.R.  §§ 404.1527(e)(2)(i-(ii) (ALJ may consider opinions of State agency medical consultants, who are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *Moore,* 405 F. 3d at 1212-13 (upholding ALJ's RFC finding which was based on examination findings and claimant's own statements of capabilities.). Specifically, the ALJ considered the objective findings and statements of Dr. Ellis, a

consultative examining physician (Tr. 1042) and Dr. Sullivan, a State agency physician (Tr. 1047), and thoroughly discussed the treatment notes of record. (Tr. 1041-1047). The ALJ found that Plaintiff's physical impairments caused some significant limitations, but that she could still perform the requirements of light work, as long as she was limited to frequent (as opposed to constant) fine manipulation. (Tr. 1041-42).

Moreover, the ALJ identified "good cause" to discount Dr. Davis' conclusory opinion. *See Phillips*, 357 F. 3d at 1241. Indeed, the ALJ found that Dr. Davis' opinion was not well-supported by his own examination notes, was inconsistent with the medical evidence as a whole, and was conclusory and otherwise unsupported. (Tr. 1047). Additionally, the ALJ cited specific reasons to discount Dr. Davis's opinion. Specifically, he noted Dr. Davis's apparent and repeated doubt that Plaintiff was disabled; his statements that he believed her mental impairments played more of a role than her physical impairments in her ability to work; the inconsistency of his statements with the other opinions of record; his failure to provide any support for his conclusory statements; and his statement to Plaintiff that if Dr. Jakes would not provide documentation supporting her disability, the best he could was to refer her to another rheumatologist. (Tr. 1047). Thus, the Court concludes based upon a review of the record as a whole that the ALJ's RFC finding is supported by substantial evidence. *Moore*, 405 F.3d at 1211.

Plaintiff, however, argues that since the ALJ was uncertain about Dr. Davis's opinion, he was required to recontact Dr. Davis. *See* Pl. Br. at 13-14. The Court disagrees. First, it appears the ALJ understood fully Dr. Davis's opinion. Indeed, the ALJ stated that it was

"unclear if this is Dr. Davis's opinion or simply a notation of [Plaintiff's] subjective allegations regarding her in ability to work. **In any event it appears Dr. Davis is (or was at some point) of the opinion that claimant is disabled.** This is an issue reserved to the Commissioner. . . "

(Tr. 1047 (emphasis added)). Second, the Eleventh Circuit has held that there is no duty to recontact a treating or examining physician when the ALJ had the necessary information to determine the claimant's impairments, residual functional capacity, and ability to work. *Robinson v. Astrue,* 365 F. App'x 993, 999 (11th Cir. 2010). After An independent review of the record, the Court is convinced that the ALJ had the necessary information to determine the Plaintiff's impairments, ability to work and residual functional capacity. Accordingly, the Court concludes that Plaintiff's argument the ALJ erred by failing to recontact Dr. Davis is meritless.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.** A separate judgment is entered herewith.

DONE this 20th day of March, 2015.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE